FILED
2017 Mar-07 AM 08:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **KELLY MCCARLEY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 7:14-cv-0834-RDP** |
| | } | |
| **CITY OF NORTHPORT,** | } | |
| | } | |
| | } | |
| **Defendant.** | | |

**MEMORANDUM OPINION**

Some cases are easy. For example, consider a case in which a former police officer sues over her dismissal. The facts show that for two hours or so, while she was supposed to be on patrol, she stepped behind the counter at a Kangaroo convenience/gas mart and ran a cash register – while wearing her police uniform. She never told her supervisor. She was supposed to be protecting the public. But instead she played the role of a "cashier." If those were the only facts presented here, this would be an easy case. And, no reputable employment lawyer with even minimal training would think this "easy case" would ever see the light of a courtroom.

But, those are not all of the Rule 56 facts in this case. For example, consider further that about eight weeks before she was fired for playing "cashier," the officer at issue complained about sexual harassment at the hands of a male officer. That officer was terminated as a result of her complaints. Thereafter, the Internal Affairs Investigator of the precinct told her that the Patrol Commander "doesn't want you in his patrol division" because "it just don't look good that you've got one male supervisor fired and one demoted." In addition, although the City has chosen to adopt a fairly rigorous progressive discipline policy, there is at least some question

about whether those policies were applied in a retaliatory manner here. These "additional" facts move this case from the easy category to the hard one.

The court has before it Plaintiff's Objections to Magistrate's Report and Recommendation (Doc. #54) filed on January 10, 2017. The Objections have been fully briefed (Docs. #57, 58) and are now before the court for review. Upon careful consideration, the court finds that the objections (Doc. #54) are due to be overruled in part and sustained in part.

## I. Procedural History

Plaintiff filed her complaint on May 5, 2014 alleging gender discrimination and retaliation in violation of Title VII and the Fourteenth Amendment. On November 23, 2015, Defendant City of Northport filed a motion for summary judgment. (Doc. #29). That motion was fully briefed (Docs. #29, 30, 31, 38). Two motions to strike were also filed (Docs. #37, 42) and fully briefed (Docs. #37, 41, 42, 44). On December 27, 2016 the Magistrate Judge entered a Report and Recommendation recommending that Defendant's Motion for Summary Judgment (Doc. #29) be granted in its entirety. (Doc. #54). The report also addressed the two motions to strike. (*Id.*).

## II. Factual Background[1]

Plaintiff Kelly McCarley, a female, was hired as a dispatcher by the City of Northport on May 19, 2003. (Doc. #29-3 at 32). In December 2004, Plaintiff was promoted to police officer and attended the Academy in 2005. (*Id.* at 42). During the relevant time period, Captain Tim Frazier was a Patrol Commander, Captain Kevin Leib was Plaintiff's direct supervisor, Gerald Burton was Internal Affairs Investigator, and Kerry Card was the Chief of Police. (Doc. #29-5 at 15, 20, 106; Doc. #29-6 at 13, 24-25, 37-38).

[1] Because Plaintiff does not object to the Magistrate Judge's recitation of the facts, they are adopted and incorporated herein. Certain facts are re-stated here for emphasis, as related to the specific objections raised by Plaintiff.

On February 20, 2013, Plaintiff received a written warning for having a negative sick leave balance. (Doc. #29-3 at 107). The following month, in March 2013, Plaintiff made complaints against Sergeant Darren Miller for what she perceived to be sexual harassment. (*Id.* at 87-110). An investigation ensued, and Miller's employment with the City was terminated. (*Id.* at 111). Patrol Commander Frazier supported the decision to terminate Miller's employment based on Plaintiff's allegations. (Doc. #29-6 at 30).

On April 21, 2013, Plaintiff, a diabetic, arrived at work not feeling well due to changes in her blood sugar levels. (Doc. #29-3 at 170-71). When she reported to Captain Leib that she did not feel well, he offered to let her go home. (Doc. #29-7 at 23). She declined. (*Id.*). Leib told her to take it easy. (*Id.*). After starting to patrol her beat, Plaintiff went to a Kangaroo gas station. (Doc. #29-3 at 151-52). The clerk there, Victoria Corder, was not feeling well due to insulin control issues and Plaintiff offered to bring her a biscuit from Hardee's. (*Id.* at 152-53). Corder declined and Plaintiff purchased a biscuit for herself, then returned to the gas station to eat it. (*Id.* at 152-53). While Plaintiff was eating her biscuit, she noticed that Corder had to check her blood sugar level and was feeling dizzy and weak. (*Id.* at 154-56, 169-70). Plaintiff helped Corder by assisting customers and running the cash register for more than an hour. (*Id.* at 154-56, 169-70). Corder was not incapacitated and did not request that Plaintiff run the cash register. (*Id.* at 156, 163). Plaintiff did not call a supervisor to ask if her actions were acceptable, nor did she report that she was not on patrol. (*Id.* at 159-61, 163).

Terry Zilke, a fellow officer, reported to Internal Affairs Investigator Burton that Plaintiff had run the cash register. (Doc. #29-9 at 12-13). Captain Frazier instructed Captain Leib to get a statement about the incident, and Leib told Plaintiff to prepare a description of the event. (Doc. #29-3 at 187). In her report, Plaintiff stated that she stayed at the gas station until she felt she

could drive safely because she had been light-headed, had a headache, and had floaters in her vision. (*Id.* at 190). Captain Leib then prepared a report, recommending that Plaintiff be counseled for her actions; Frazier forwarded the report to Chief Card. (Doc. #29-6 at 14-20).

Chief Card instructed Burton to further investigate the Kangaroo incident. (Doc. #29-5 at 36). After Burton did so, he recommended that Plaintiff's employment be terminated. (*Id.* at 36-38). On May 9, 2013, Plaintiff was officially terminated for "Conduct Unbecoming a Police Officer" and "Willfully Neglect[ing] her Duties," both Class 2 infractions. (Doc. #31-13). The termination noted that Plaintiff had two prior Class 3 infractions in the past year. (Doc. #31-14). The City contends that under its progressive discipline policy, Plaintiff's multiple Class 2 infractions within a twelve-month period made the Kangaroo incident a terminable offense. (Doc. #31-14).

## III. Analysis of the Objections

Plaintiff objects to the recommendation that the City is due summary judgment on her gender discrimination and retaliation claims. (Doc. #54 at 1). Specifically, she argues that the Magistrate Judge erred in analyzing the Rule 56 evidence related to the comparators, the circumstantial mosaic, and pretext. (*See generally* Doc. #54). The court considers each of these three objections in turn.

### A. Whether the Magistrate Judge Erred by Recommending that Summary Judgment Be Granted on Plaintiff's Gender Discrimination Termination Claim in Light of the Evidence Regarding Comparators.

Plaintiff's first objection argues that the Magistrate Judge erroneously "require[ed] Plaintiff to satisfy the *McDonnell Douglas* burden-shifting framework and erroneously recommend[ed] that summary judgment be granted on Plaintiff's gender discrimination claim because Plaintiff allegedly could not demonstrate pretext as to Defendant's articulated reasons for termination." (Doc. #54 at 1). Plaintiff's argument travels two avenues: (1) the Magistrate

Judge erred in rejecting Plaintiff's comparator evidence (*id.* at 2); and (2) the Magistrate Judge erred in failing to recognize that Plaintiff's discrimination claim is viable under the "circumstantial mosaic" theory, an alternative to *McDonnell Douglas*'s burden-shifting framework (*id.* at 4).

In a circumstantial evidence case, a plaintiff may establish a prima facie case by showing: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) her employer treated her less favorably than someone outside her protected class. *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000); citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Alternatively, with respect to the fourth prong, a plaintiff may demonstrate that she was replaced by someone outside her protected class. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003). Here, the Magistrate Judge found that Plaintiff had established the prima facie case using the replacement method, yet ultimately determined that comparator evidence was insufficient to carry Plaintiff's burden on pretext. (Doc. #51 at 15). This court agrees.

The City of Northport articulated that Plaintiff's employment was terminated because she ran a cash register at a convenience store while simultaneously getting paid to patrol as a police officer. (*Id.* at 17). Plaintiff argues that the termination decision was pretextual because "Plaintiff identified five comparators with multiple class 2 offenses within a 12 month period who were not charged with a class 1 offense and were not terminated."[2] (Doc. #54 at 2). The

[2] Plaintiff also asserts that the Magistrate Judge "appl[ied] an overly restrictive view of the standard of 'similarly situated' … [by] decid[ing] that Plaintiff was required to identify a male police officer who had run a cash register." (Doc. #54 at 4). The Magistrate Judge did not make such a finding. To the contrary, the Magistrate Judge clearly required Plaintiff to demonstrate that her comparators engaged in "the same or similar conduct." (Doc. #51 at 17) (citing *Jones v. Bessemer Carraway Med. Cntr.*, 137 F.3d 1306, 1311 (11th Cir. 1998)).

Magistrate Judge rejected this argument, finding that the purported male comparators were not "similarly situated in all relevant respects." (Doc. #51 at 18) (citing *Holifield*, 115 F.3d at 1562).

The Magistrate Judge's conclusion is supported by both the evidence and the law. The Magistrate Judge considered the infractions of Amanda Crites, Darrin Miller, Terry Zilke, Terri Mercado, Joshua Curtman, Brian Hardemon, Jose Martinez, and John Conger. (*Id.* at 19-20). Of those officers with disciplinary actions, Plaintiff offered five males as comparators. But each situation was "readily distinguishable," both because "none … concern[ed] an officer who stopped patrolling for one and a half to two hours and did not notify his or her supervisor" and none "opened the city to liability" by assisting in "private business" while on patrol. (Doc. #51 at 21). The purported comparators had different police chiefs and different supervisors, and were each involved in different behaviors (*i.e.*, actions taken in the line and scope of an officer's duties). (Doc. #51 at 20-22). The Rule 56 evidence does not suggest that those comparators engaged in "the same or similar conduct" and the evidence in the file shows they were "disciplined in different ways." Thus, Plaintiff has not presented viable comparators for a pretext analysis. *See Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."); *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1261 n. 5 (11th Cir. 2001) ("While not always the case, differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination.").

For these reasons, Plaintiff's first objection is due to be overruled, and the report of the Magistrate Judge on Plaintiff's gender discrimination termination claim is due to be adopted and approved.

**B. Whether the Magistrate Judge Erred by Recommending that Summary Judgment be Granted on Plaintiff's Gender Discrimination Termination Claim in Light of Plaintiff's "Circumstantial Mosaic" Theory of Discrimination**

Plaintiff's next objection centers on the Magistrate Judge's pretext analysis and asserts that he "erred in failing to recognize that Plaintiff's discrimination claim is viable under either the 'circumstantial mosaic' or 'mixed motive' theory in addition to *McDonnell Douglas*'s burden-shifting framework." (Doc. #54 at 4) (citing *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016)). Significantly, Plaintiff has not alleged a mixed-motive case. (Doc. #54 at 4). However, she contends non-comparison circumstantial evidence creates a triable issue in this case because the City of Northport allegedly made exceptions to its lockstep discipline policy for males, but not for Plaintiff. (Doc. #54 at 5-6) (citing *Quigg*, 814 F.3d at 1235).

The Magistrate Judge did not specifically address the circumstantial mosaic method of establishing a triable question in a mixed motive case (*see generally* Doc. #51 at 16-23) - perhaps for good reason. Plaintiff mentioned only in passing the possibility of her claim succeeding based on a "convincing mosaic" theory. (Doc. #30 at 27). Nevertheless, an employee "will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith*, 644 F.3d at 1328. Here, however, Plaintiff's attempt to invoke *Smith* and avoid *McDonnell Douglas* are weak and unpersuasive.

Plaintiff emphasizes that the City of Northport employs a facially lockstep progressive discipline policy, classifying infractions based on either the severity of the infraction or the occurrence of multiple infractions. (Doc. #30 at 24). Plaintiff alleges that the City bent its progressive discipline policy for male employees, including John Conger, Jeffrey Miller, Jose

Martinez, Terrance Gray, and Milton Bailey. (*Id.* at 26). Of those five male employees, however, only two were disciplined during the relevant time period when Card was Acting Chief of Police and Chief of Police. (Doc. #29-10 at 8, 12, 161). *See Silvera*, 244 F.3d at 1261, n. 5 ("differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination"). The remaining two male employees, Martinez and Conger, were written up for neglect/inattention to duty and failing to follow proper procedure, respectively. (Doc. #51 at 19-20). Their write-ups were for violation of vastly different work rules than those that Plaintiff violated. Even more telling, although Plaintiff alleges she was treated unfavorably because of her gender, the Rule 56 record indicates that several female officers were treated more favorably than they should have been under a strict reading of the progressive discipline policy. (Doc. #38, Exhs. K, G). *See Davis v. Dunn Const. Co., Inc.*, 872 F. Supp.2d 1291 (N.D. Ala. 2012) (holding "that a plaintiff does not create an issue of fact merely by selectively choosing a single comparator who was allegedly treated more favorably, while ignoring a significant group of comparators who were treated equally to her.") (quoting *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 642 (3d. Cir. 1998)). There is simply no Rule 56 evidence indicating that Plaintiff's gender was a motivating factor in the termination of her employment.

For these reasons, Plaintiff's second objection is due to be overruled, and the report of the Magistrate Judge on this issue is due to be adopted and approved.

**C. Whether the Magistrate Judge Erred by Recommending that Summary Judgment be Granted on Plaintiff's Retaliation Claim**

Plaintiff's final objection to the Report and Recommendation is that the Magistrate Judge "erred in finding that Plaintiff had not demonstrated a prima facie case of retaliation and that she could not establish pretext." (Doc. #54 at 6). The parties seem to agree (at least at the initial

briefing stage) that the traditional *McDonnell* Douglas analysis applies to the retaliation claim. (Doc. #29-1 at 32-33; Doc. #30 at 28-30). Using this framework, to establish a prima facie case of retaliation, Plaintiff must show: (1) she engaged in protected activity or expression; (2) she suffered an adverse employment action; and (3) the adverse employment action was causally connected to the protected conduct. *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998); *see also Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989). If Plaintiff is able to advance a prima facie case of retaliation, the burden then shifts to the City of Northport to articulate legitimate, non-discriminatory reasons for the alleged retaliatory acts. *See Holifield*, 115 F.3d at 1566. Upon the employer's successful articulation, for a claim to survive summary judgment, Plaintiff must demonstrate that the employer's proffered explanation operates as a pretextual ruse for retaliation. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (citation and internal quotation omitted).

Plaintiff argues that the Magistrate Judge engaged in an incorrect analysis by requiring Plaintiff to show a causal connection between the protected activity and the decision to launch an investigation into Plaintiff's activities at the Kangaroo store. (Doc. #54 at 6). The Magistrate Judge reasoned that because the decision to launch the investigation was made by Chief Card, and no discriminatory animus has been ascribed to him, the two events were completely unrelated.[3] (Doc. #51 at 26) ("Thus, the temporal proximity between the plaintiff's complaint against Miller and when she worked at the Kangaroo is meaningless."). However, according to Plaintiff, the Magistrate Judge should have inquired whether a causal connection existed between the protected activity and the termination of employment. (Doc. #54 at 6) ("Plaintiff's burden is

[3] Plaintiff presents evidence that Gerald Burton, the Internal Affairs Investigator, played a decisive role in the decision to terminate her employment. (Doc. #54 at 7). Plaintiff assigns to Burton the retaliatory motive. (*Id.*).

to show a causal connection between her protected activity and the decision to terminate her employment, as termination is the adverse employment action at issue in this lawsuit."). The court agrees.

On or about March 12, 2013, Plaintiff made a protected complaint against Sergeant Darren Miller, for what she perceived to be sexual harassment. (Doc. #29-3 at 87-110). After investigation, Miller's employment was terminated. (Doc. #29-6 at 30). On May 9, 2013, Plaintiff's employment with the City of Northport was formally terminated. (Doc. #29-1 at 37). Where temporal proximity is the only basis for causation, "a delay of three to four months is too long, as a matter of law, to establish causation by temporal proximity." *Baroudi v. Sec'y, U.S. Dept. of Veteran's Affairs*, 616 Fed. Appx. 899, 902 (11th Cir. 2015) (per curiam) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)). However, the Eleventh Circuit has found that seven weeks is "sufficiently proximate to create a causal nexus." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). Here, the relevant time span is a period of eight weeks and two days – squarely in the middle of the grey area staked out by the Eleventh Circuit. *See Smith v. City of Fort Pierce, Fla.*, 565 Fed. Appx. 774, 778 (11th Cir. 2014) (holding that a causal connection may be established, even in light of *Nassar*, upon a showing that the adverse action is not wholly unrelated to the protected activity). For this reason, the court finds that the *McDonnell Douglas* causal connection has been established for purposes of summary judgment.[4]

[4] Some courts have held that the "but-for" causation standard applies at the prima facie stage of the *McDonnell Douglas* analysis. *See e.g. Blakney v. City of Philadelphia*, 559 Fed. Appx. 183, 185-86 (3d Cir. 2014) (holding that "but-for" causation applies at the prima facie stage of the *McDonnell Douglas* analysis). The Eleventh Circuit has noted, in unpublished decisions, that the Supreme Court did not clarify the role of "but for" causation in a plaintiff's prima facie case. *Ramirez v. Bausch & Lomb*, 546 Fed. Appx. 829, 833 n. 2 (11th Cir. 2013). Because the parties do not dispute that the traditional prima facie analysis applies, it is used for the purpose of the analysis herein.

After addressing Plaintiff's prima facie showing, the Magistrate Judge went on to analyze whether Plaintiff could show that "but for" her protected activity, she would not have been terminated. *University of Texas Southwestern Med. Cntr. v. Nassar*, 133 S. Ct. 2517, 2533-34 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation …"). (Doc. #51 at 27-29). That is, because the City of Northport articulated that it had terminated Plaintiff's employment for running the cash register at a privately owned store while she should have been on patrol, Plaintiff now bears the burden of showing both that: (1) the proffered reason is false (*i.e.*, a pretext); and (2) retaliation was the real reason for the termination. *See St. Mary's Honor Cntr. v. Hicks*, 509 U.S. 502, 515 (1993). The Magistrate Judge ultimately concluded that Plaintiff could not meet the burden of establishing that retaliation was the "but for" reason for the termination decision. (Doc. #51 at 29).

Plaintiff argues that the Magistrate Judge misapplied (or misunderstood) the facts related to the "but for" pretext analysis. (Doc. #54 at 6-12). Plaintiff emphasizes that Burton played a decisive role in the termination decision and made the decision to charge Plaintiff with two separate infractions, instead of just one, for the same event. (*Id.* at 7). Ultimately, Burton recommended that Plaintiff be terminated for an offense that "would otherwise not have been terminable under Defendant's 'lockstep' progressive discipline policy, and Chief Card accepted Burton's recommendation without making any independent investigation." (*Id.* at 7-8) (citing *Staub v. Proctor Hosp*., 562 U.S. 411, 421 (2011)). Notably, Burton made this recommendation after telling Plaintiff that Frazier "doesn't want you in his patrol division" because "it just don't look good that you've got one male supervisor fired and one demoted."[5] (*Id.* at 8-9). Plaintiff

[5] On a motion to strike, the Magistrate Judge ruled that Burton's statements were admissible as non-hearsay under Rule 801(d)(2)(D) because he participated "at least to some extent" in the decision to terminate Plaintiff's employment. That decision has not been challenged. (Doc. #51 at 7) ("[T]o the extent Burton's belief that Frazier

asserts that a reasonable jury could draw from this evidence an inference that Burton took into account Plaintiff's sexual harassment complaint in advocating for her termination. (*Id.* at 9-10). This court agrees.

Although the evidence may be "shaky," "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. at 249. In this case, while the evidence is far from overwhelming, summary judgment is nonetheless improper because there is at least substantial evidence to support Plaintiff's retaliation theory and the credibility of deponents must be weighed. *Strickland v. Norfolk S. R.R. Co.*, 692 F.3d 1151, 1162 (11th Cir. 2012). Will a jury decide that this is an easy case? Perhaps, but that is a decision that a jury must make, not this court.

For these reasons, Plaintiff's third objection is due to be sustained and the report of the Magistrate Judge on this issue is due to be rejected.

## IV. Conclusion

For the reasons set forth herein, the Report and Recommendation (Doc. #51) is due to be adopted and approved in part and rejected in part. The Objections (Doc. #54) are due to be sustained in part and overruled in part. A separate order will be entered.

**DONE** and **ORDERED** this March 7, 2017.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

did not want the plaintiff in his patrol division has any bearing on the facts of this case … plaintiff's statement of what Burton said to her [will be considered].").